CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER CARBINE, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

CROSNER LEGAL, P.C.

### INTRODUCTION

1.      Plaintiff Jennifer Carbine ("Plaintiff") on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby brings this action against Target Corporation ("Defendant" or "Target"), and upon information and belief and investigation of counsel, alleges as follows:

2.      This is a California consumer class action for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for breach of express warranty.

3.      Defendant manufactures, distributes, advertises, markets, and sells Good and Gather Pasta Sauce products. The packaging prominently displays on the front of the label the claim that these Products[1] contain "**No Artificial Colors, Flavors, or Preservatives**."

4.      This statement is false. Each of the Products are made with citric acid— a preservative ingredient used in food products.

5.      Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium product that is free from preservatives.

6.      Plaintiff, who purchased the Products in California, was deceived by Defendant's unlawful conduct and brings this action on her own behalf and on behalf of California consumers to remedy Defendant's unlawful acts.

---

[1] "Products" means all Good and Gather Pasta Sauce products labeled as containing "No Artificial Colors, Flavors, or Preservatives" that include citric acid as an ingredient. The Products include, but are not limited to, Good and Gather Marinara, Good and Gather Traditional, Good and Gather Tomato and Basil, Good and Gather Garden Combo, Good and Gather Mushroom, and Good and Gather Organic Three Cheese.

1

1

**JURISDICTION AND VENUE**

2       7.    This Court has original jurisdiction over this action pursuant to 28

3 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100

4 members in the proposed class; (2) members of the proposed class have a different

5 citizenship from Defendant; and (3) the claims of the proposed class members

6 exceed $5,000,000 in the aggregate, exclusive of interest and costs.

7       8.    This Court has personal jurisdiction over Defendant because

8 Defendant conducts and transacts business in the State of California, contracts to

9 supply goods within the State of California, and supplies goods within the State of

10 California. Defendant, on its own and through its agents, is responsible for the

11 distribution, marketing, labeling, and sale of the Products in California,

12 specifically in this judicial district. The marketing of the Products, including the

13 decision of what to include and not include on the labels, emanates from

14 Defendant. Thus, Defendant has intentionally availed itself of the markets within

15 California through its advertising, marketing, and sale of the Products to

16 consumers in California, including Plaintiff. The Court also has specific

17 jurisdiction over Defendant as it has purposefully directed activities towards the

18 forum state, Plaintiff's claims arise out of those activities, and it is reasonable for

19 Defendant to defend this lawsuit because it has sold deceptively advertised

20 Products to Plaintiff and members of the Class in California. By distributing and

21 selling the Products in California, Defendant has intentionally and expressly aimed

22 conduct at California which caused harm to Plaintiff and the Class that Defendant

23 knows is likely to be suffered by Californians.

24       9.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial

25 part of the events or omissions giving rise to the claim occurred in this District.

26 Plaintiff purchased the Products within this District.

27

**PARTIES**

28       10.   Defendant Target Corporation is a Minnesota corporation that

maintains its principal place of business at 1000 Nicollet Mall, Minneapolis,

CROSNER LEGAL, P.C.

2

Minnesota 55403. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products.

11.     Plaintiff Jennifer Carbine is a resident of California. Plaintiff purchased the Products during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims as set forth below.

### FACTUAL ALLEGATIONS

### "NO ARTIFICIAL COLORS, FLAVORS, OR PRESERVATIVES" IS PROMINENTLY DISPLAYED ON THE LABELS OF THE PRODUCTS

12.     The front labels for each of the Products prominently state that the Products contain "No Artificial Colors, Flavors, or Preservatives" thereby misleading reasonable consumers into believing that the Products are free from artificial preservatives. However, each of the Products contain the artificial preservative citric acid. Below are examples of labels for the Products:

Good and Gather Marinara



INGREDIENTS: TOMATO PUREE (WATER, TOMATO PASTE), DICED TOMATOES IN TOMATO JUICE, CANOLA OIL, CONTAINS LESS THAN 1% OF: SALT, DEHYDRATED ONIONS, DEHYDRATED GARLIC, SPICE, CITRIC ACID, DEHYDRATED PARSLEY.

Good and Gather Traditional



INGREDIENTS: TOMATO PUREE (WATER, TOMATO PASTE), DICED TOMATOES IN TOMATO JUICE, SUGAR, VEGETABLE OIL (COTTONSEED OIL AND/OR CANOLA OIL AND/OR OLIVE OIL), CONTAINS LESS THAN 1% OF: SALT, DEHYDRATED GARLIC, ONION, CITRIC ACID, DEHYDRATED PARSLEY.

CROSNER LEGAL, P.C.

Good and Gather Tomato and Basil



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.

Good and Gather Garden Combo



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Good and Gather Mushroom



CLASS ACTION COMPLAINT

1

<u>Good and Gather Organic Three Cheese</u>



CLASS ACTION COMPLAINT

**THE CITRIC ACID IN THE PRODUCTS IS AN ARTIFICIAL PRESERVATIVE**

13.    Defendant uses a synthetic form of citric acid that is derived from heavy chemical processing.[2] The citric acid used in the Products is commercially produced and is manufactured using a type of black mold called *Aspergillus niger*.[3] Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

14.    An article published in the *Toxicology Reports Journal* explains that citric acid produced through *aspergillus niger* fermentation is artificial:

> Citric acid naturally exists in fruits and vegetables. However, **it is _not_ the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[4]

---

[2] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/ (emphasis added).

[3] *Id*; Pau Loke Show, *et al*., *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[4] Iliana E. Sweis, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

CROSNER LEGAL, P.C.

15.     Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[5] The *Toxicology Reports Journal* article explains that "the potential presence of impurities or fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[6] The article further explains:

> Given the thermotolerance of A. niger, there is great potential that byproducts of A. niger remain in the final [manufactured citric acid] product. Furthermore, given the pro-inflammatory nature of A. niger even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies.[7]

16.     The Food and Drug Administration ("FDA") has also sent warning letters to companies stating that certain products labeled as "natural" are misbranded because they contain artificial citric acid as an ingredient. For example, on August 29, 2001, the FDA sent Hirzel Canning Company ("Hirzel") a warning letter regarding its canned tomato products.[8] With respect to Hirzel's Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos, the FDA stated that these products could not bear the "All Natural" claim on the label because the products contained a synthetic ingredient, citric acid.[9]

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *See* **Exhibit 1** attached hereto.

[9] *Id.*

CLASS ACTION COMPLAINT

17.    Similarly, on August 16, 2001, the FDA sent Oak Tree Dairy Farm, Inc. ("Oak Tree") a warning letter regarding its "Oaktree Real Brewed Iced Tea," "Oaktree Fruit Punch," and "Oaktree All Natural Lemonade" products.[10] With respect to Oak Tree's "Oaktree Real Brewed Iced Tea," the FDA stated that this product could not bear the "100% Natural" and "All Natural" claims on the label because the product contained a synthetic ingredient, citric acid.[11]

18.    Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans …"[12] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[13]  Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural."[14]

19.    Below are images of the chemical process used to create citric acid for use in food – a process that is visibly artificial:



[10] *See* **Exhibit 2** attached hereto.

[11] *Id.*

[12] *Artificial*, DICTIONARY.COM, *available at* https://www.dictionary.com/browse/artificial

[13] *Artificial*, MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/artificial

[14] *Artificial*, CAMBRIDGE DICTIONARY, *available at* https://dictionary.cambridge.org/us/dictionary/english/artificial

CLASS ACTION COMPLAINT



20.    Citric acid also acts as a preservative when added to food products, including the Products at issue. The FDA defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[15]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

---

[15] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

CLASS ACTION COMPLAINT

21.     In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[16]

22.     The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties, as shown below[17]:

## Preservatives

Food preservatives are classified into two main groups: antioxidants and antimicrobials. Antioxidants are compounds that delay or prevent the deterioration of foods by oxidative mechanisms. Antimicrobial agents inhibit the growth of spoilage and pathogenic microorganisms in food.

| Food preservatives | |
| --- | --- |
| **chemical agent** | **mechanism of action** |
| **Antioxidants** | |
| ascorbic acid | oxygen scavenger |
| butylated hydroxyanisole (BHA) | free radical scavenger |
| butylated hydroxytoluene (BHT) | free radical scavenger |
| citric acid | enzyme inhibitor/metal chelator |
| sulfites | enzyme inhibitor/oxygen scavenger |
| tertiary butylhydroquinone (TBHQ) | free radical scavenger |
| tocopherols | free radical scavenger |

---

[16] *See* **Exhibit 3** attached hereto.

[17] *Preservatives*, BRITANICA, *available at* https://www.britannica.com/topic/food-additive/Preservatives#ref502211

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

23. The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[18]

24. The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[19]

25. Several academic journals also note the use of citric acid as a preservative.[20] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh. It does this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[21] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[22]

---

[18] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

[19] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

[20] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION) (2011), *available at* https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, *Use of citric acid in broiler diets*, WORLD'S POULTRY SCIENCE JOURNAL VOL. 68, ISSUE 1 (Feb. 21, 2012), *available at* https://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[21] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23, 2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

[22] *Citric Acid: One of the Most Important Preservatives in The World,* FBC INDUSTRIES, INC. (Feb. 5, 2019), *available at* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

26.    Citric acid functions as a preservative in the Products regardless of whether Defendant intended to use citric acid as a preservative. Citric acid functions as a preservative even if it is also added to the Products for some other use. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[23]

### REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE LABELING STATEMENT AND SUFFERED ECONOMIC INJURY

27.    Consumers, like Plaintiff, relied on Defendant's "No Artificial Colors, Flavors, or Preservatives" labeling statement. The "No Artificial Colors, Flavors, or Preservatives" statement on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[24]

28.    Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative

---

[23] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

[24] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed,* Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

CROSNER LEGAL, P.C.

class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial preservative ingredient.

### PLAINTIFF'S PURCHASE OF THE PRODUCTS

29.     Plaintiff Jennifer Carbine has purchased Good and Gather Products, including Good and Gather Marinara, Good and Gather Tomato Basil, and Good and Gather Organic Three Cheese, with the "No Artificial Colors, Flavors, or Preservatives" label claim during the class period. Plaintiff's last purchase of the Products was in approximately June of 2023 from a Target store located in or around Long Beach, California.

30.     Plaintiff saw and relied on the "No Artificial Colors, Flavors, or Preservatives" claim on the labels of the Products.  Plaintiff would not have purchased the Products, or would have paid less for the Products, had she known that the products actually contain an artificial preservative ingredient. As a result, Plaintiff suffered injury in fact when she spent money to purchase the Products she would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff desires to purchase the Products again if the labels of the products were accurate and if the products actually contained "No Artificial Colors, Flavors, or Preservatives" However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

### NO ADEQUATE REMEDY AT LAW

31.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

32.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

33.     A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as containing "No Artificial Colors, Flavors, or Preservatives" when the Products actually contain the artificial preservative ingredient citric acid. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain an artificial preservative. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

34. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

36. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

37.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

38.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

39.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

40.     Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.     Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.     Whether Plaintiff and the Class are entitled to injunctive relief;

e.     Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

41.     Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading

19

conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

42.    Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

43.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

CROSNER LEGAL, P.C.

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

44.     Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

45.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

46.     Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

**FIRST CLAIM FOR RELIEF**

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750 *et seq.***

47.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

48.     Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

49.     At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

50.     At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

51.     At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

52.     The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

53.     Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Artificial Colors, Flavors, or Preservatives." Defendant failed to disclose that the Products contain an artificial preservative ingredient called citric acid. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain an artificial preservative to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a)     Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b)      Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)      Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)      Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

54.     Defendant violated the CLRA because the Products were prominently advertised as containing "No Artificial Colors, Flavors, or Preservatives," but, in reality, the Products contain an artificial preservative ingredient called citric acid. Defendant knew or should have known that consumers would want to know that the Products contain an artificial preservative.

55.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

56.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

57.     Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein, actual damages, and attorneys' fees and costs.

58.     Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. More than 30 days have passed since the Defendant's receipt of Plaintiff's written notice and Defendant has failed to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers. Accordingly,

Plaintiff seeks actual damages, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

59.    Pursuant to section 1780(d) of the CLRA, attached hereto is an affidavit showing that this action was commenced in a proper forum.

<u>SECOND CLAIM FOR RELIEF</u>

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

60.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

61.    Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

62.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

63.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

64.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain an artificial preservative) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

65.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no preservatives.

66.    Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

67.    Defendant's wrongful business practices and violations of the UCL are ongoing.

68.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

69.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

CLASS ACTION COMPLAINT

1  Pursuant to California Business & Professions Code section 17203, Plaintiff,
2  individually and on behalf of the Class, seeks (1) restitution from Defendant of all
3  money obtained from Plaintiff and the other Class members as a result of unfair
4  competition; (2) an injunction prohibiting Defendant from continuing such
5  practices in the State of California that do not comply with California law; and (3)
6  all other relief this Court deems appropriate, consistent with California Business
7  & Professions Code section 17203.

8                         **THIRD CLAIM FOR RELIEF**
9                      **Breach of Express Warranty**

10      70.    Plaintiff realleges and incorporates by reference all allegations
11  contained in this complaint, as though fully set forth herein.

12      71.    Plaintiff brings this claim for breach of express warranty individually
13  and on behalf of the Class against Defendant.

14      72.    As the manufacturer, marketer, distributor, and seller of the Products,
15  Defendant issued an express warranty by representing to consumers at the point of
16  purchase that the Products contain "No Artificial Colors, Flavors, or
17  Preservatives."

18      73.    Plaintiff and the Class reasonably relied on Defendant's
19  misrepresentations, descriptions and specifications regarding the Products,
20  including the representation that the Products contain "No Artificial Colors,
21  Flavors, or Preservatives."

22      74.    Defendant's representations were part of the description of the goods
23  and the bargain upon which the goods were offered for sale and purchased by
24  Plaintiff and Members of the Class.

25      75.    In fact, the Products do not conform to Defendant's representations
26  because the Products contain an artificial preservative ingredient called citric acid.
27  By falsely representing the Products in this way, Defendant breached express
28  warranties.

CROSNER LEGAL, P.C.

76.    Plaintiff relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

77.    As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the  Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the   Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the  Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.    Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

CLASS ACTION COMPLAINT

f.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.      Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: May 3, 2024                      CROSNER LEGAL, P.C.

                                        By:      */s/ Michael T. Houchin*
                                        MICHAEL T. HOUCHIN

                                        9440 Santa Monica Blvd. Suite 301
                                        Beverly Hills, CA 90210
                                        Tel: (866) 276-7637
                                        Fax: (310) 510-6429
                                        mhouchin@crosnerlegal.com

                                        *Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT

**<u>Affidavit Pursuant to Civil Code Section 1780(d)</u>**

I, MICHAEL T. HOUCHIN, declare as follows:

1.     I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2.     This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3.     Defendant Target Corporation has done, and is doing, business in California, including in this county. Such business includes the marketing, promotion, distribution, and sale of the Products within the State of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed May 3, 2024 at San Diego, California.

CROSNER LEGAL, P.C.

By:     */s/ Michael T. Houchin*
   MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

CROSNER LEGAL, P.C.

29